IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GILBERT LANE,

   Petitioner,

 v.

JEAN HILL, Superintendent,
Eastern Oregon Correctional Institution,

   Respondent.

Civil No. 01-633-BR

OPINION AND ORDER

 GILBERT LANE
 SID #
 Eastern Oregon Correctional Institution
 2500 Westgate
 Pendleton, OR

  Petitioner *Pro Se*

 HARDY MYERS
 Attorney General
 YOULEE YIM YOU
 Assistant Attorney General
 Department of Justice
 1162 Court Street N.E.
 Salem, OR  97301-4096

  Attorneys for Respondent

1 - OPINION -

BROWN, Judge.

Petitioner, an inmate at the Eastern Oregon Correctional Institution who is proceeding *pro se*, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner was originally represented by counsel in this action, but on March 17, 2005, this Court issued an Order permitting counsel to withdraw. Petitioner was given leave to file supplemental *pro se* briefing, but did not do so.

Currently before the Court is Petitioner's Second Amended Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody (#74). For the reasons that follow, the Second Amended Petition is DENIED, and this action is DISMISSED.

### **FACTUAL BACKGROUND**

On January 24, 1985, Petitioner, Chris Cleveland, Jeff Anderson, and Kelly Willoughby were drinking at the Woodchippers Tavern in Lebanon, Oregon. William Estep, who was a stranger to them before that night, was also at the tavern and was buying drinks. Mr. Estep was not a large man, was weakened by a back injury, and was heavily intoxicated.

Mr. Estep disclosed to Petitioner and the others that he had $2,000 cash in his possession. Cleveland hatched a plan to rob Mr. Estep, and by Petitioner's own admission to the police, the group (Petitioner, Cleveland, Anderson, and Willoughby) decided to

"run a con on the old man" and to try to get his money. Cleveland told Willoughby, outside the presence of Petitioner and Anderson, that he was "going to kill the sucker."

Pursuant to Cleveland's plan, Petitioner drove Mr. Estep in Mr. Estep's car to an alley where the others would be waiting. Petitioner told police Mr. Estep was "really drunk," "couldn't walk," and had to be helped into his car. Meanwhile, Cleveland, Willoughby, and Anderson walked to the alley. On the way, Cleveland went to his house and picked up two pool cues.

Petitioner and Mr. Estep arrived at the alley and got out of the car. Cleveland struck Mr. Estep in the head with a pool cue, and he fell down. Petitioner and the others, except Willoughby, began beating Mr. Estep as he lay on the ground. Willoughby testified that Cleveland and Anderson were using the pool cues, and Petitioner was kicking the victim. After the robbery was concluded, one pool cue was given to Petitioner, who disposed of it in a dumpster.

After the assault, Mr. Estep was loaded onto the floorboard of the back seat of his car. Cleveland and Anderson drove off with him, while Willoughby and Petitioner went to a nearby apartment. Petitioner carried away Mr. Estep's wallet. Upon arriving at the apartment, Petitioner and Willoughby found $1624 in the wallet. Petitioner put the wallet and money in his coat pocket and put his coat in a closet.

After Willoughby and Petitioner had been at the apartment for some time, Anderson arrived and said that "the guy is floating." Cleveland arrived 10-15 minutes later, and they divided up the money from Mr. Estep's wallet. One hundred dollars was set aside for another party, Rick Patterson, "to send the car to the crusher." Petitioner, Cleveland, Willoughby, and Anderson each took $350.

The victim's body was recovered the next day in the river. The medical examiner concluded the cause of death was asphyxiation by drowning, but noted the multiple injuries suffered by the victim were a "contributing condition." Mr. Estep's car was recovered the following day at a park. The interior of the car was covered in blood, and the front seat had been set on fire. Petitioner's palm print was found on the outside of the right passenger side door.

## PROCEDURAL BACKGROUND

Following a jury trial in Linn County, Oregon, on November 13, 1985, Petitioner was found guilty of Aggravated Murder, Murder, and First-Degree Robbery. The trial judge merged the convictions, and on January 9, 1986, sentenced Petitioner to life imprisonment with a 30-year minimum sentence. Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v.*

*Lane*, 82 Or. App. 551, 729 P.2d 977 (1986), *rev. denied*, 302 Or. 657, 733 P.2d 1381 (1986).

Petitioner then filed a state post-conviction ("PCR") proceeding. The PCR trial judge granted relief on Petitioner's claim that his criminal trial and appellate counsel were constitutionally ineffective for failing to challenge the trial court's failure to instruct the jury that intent to murder is a necessary element of Aggravated Murder. The PCR trial judge set aside the Aggravated Murder conviction and remanded the case to the trial court for re-sentencing or for a new trial on the Aggravated Murder charge. The PCR trial judge denied relief on the remaining claims and, specifically, refused to hear Petitioner's claim of actual innocence of the Murder. Petitioner appealed the denial of his actual innocence claim but, again, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Lane v. Armenakis*, 165 Or. App. 999 P.2d 562, *rev. denied*, 330 Or. 363, 6 P.3d 1003 (2000)

On remand, the prosecutor chose not to retry Petitioner on the Aggravated Murder charge. Accordingly, the trial court re-sentenced Petitioner to life imprisonment on the merged counts of Murder and First-Degree Robbery. Petitioner's direct appeal from the re-sentencing is pending in the Oregon Court of Appeals.

On May 2, 2001, Petitioner filed this federal habeas corpus action. Following extensive briefing and numerous delays, on February 17, 2005, Petitioner filed his Second Amended Petition. In his Second Amended Petition, Petitioner alleges five claims for relief, each with numerous supporting facts. In his supporting memorandum, however, Petitioner addresses only the claims that trial counsel provided constitutionally ineffective assistance when he failed: (1) to explain the felony murder doctrine to Petitioner, causing Petitioner to reject a plea offer he otherwise would have accepted; (2) to pursue the statutory affirmative defense to felony murder; and (3) to pursue the defense to the aggravated murder charge that no evidence supported the statutorily required personal intent to kill.

Respondent argues the third claim is moot because the state PCR trial court already granted relief on this ground. In addition, Respondent contends the first two claims have been procedurally defaulted. Although Petitioner concedes mootness, he argues his third claim nonetheless is relevant to bolster his general argument of ineffective assistance of counsel. Petitioner also concedes he procedurally defaulted the first two claims, but he argues the default should be excused because he has presented evidence of actual innocence.

**DISCUSSION**

I.  **Procedurally Defaulted Claims**

   A.  **Standards**

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceeding before a federal court may consider granting habeas corpus relief. See 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, a prisoner must fairly present his federal claims to the state courts. *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003); *Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

A federal habeas claim is procedurally defaulted if the claim could have been raised in state court, but was not and is now procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, (1991). If a state prisoner has procedurally defaulted his federal claim in state court, federal habeas review is precluded unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750.

The "miscarriage of justice" exception to procedural default is limited to habeas petitioners who can show that "a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 & n. 32. "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Id*. at 316.

To be credible, a claim of actual innocence must be supported with "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324. The "new" evidence need not be newly available, just newly presented – that is, evidence that was not presented at trial due to unavailability or exclusion." *Sistrunk v. Armenakis*, 292 F.3d 669, 673 n. 4 (9th Cir. 2002) (*en banc*), *cert. denied*, 537 U.S. 1113 (2003).

The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of

legal error. *See id*. at 321. It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Id*. at 329; *see Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001) ("the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found [petitioner] guilty"), *cert. denied*, 535 U.S. 950 (2002). In making this determination, this Court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. *Schlup*, 513 U.S. at 332.

    **B.**    **Analysis**

In this case, Petitioner presents evidence which, while previously discoverable, was not presented at trial and is, therefore, considered to be "new." *See Griffin v. Johnson,* 350 F.3d 956, 963 (9th Cir. 2003), *cert. denied*, 541 U.S. 998 (2004). The new evidence includes Kelly Willoughby's Presentence Report, transcripts of tape-recorded interviews of Chris Cleveland and Jeff Anderson conducted by the prosecution after the state PCR court remanded the case, and an affidavit obtained from Chris Cleveland after his release from prison.

Petitioner argues the new evidence establishes Petitioner had a very limited role in the crime and did not know of or participate in the actual murder. Specifically, Petitioner argues

the new evidence reveals that the original plan was always only to drop off the unconscious victim, even after Petitioner left the scene of the beating, and that everything changed when the victim unexpectedly woke up while Cleveland was driving away. At that point, Anderson beat the victim about the head with a flashlight, and when Cleveland and Anderson could not find a pulse, they decided on a new plan -- to dispose of what they thought was the victim's body by throwing it in the river.

Respondent counters that the new evidence does not establish Petitioner's actual innocence. This Court agrees.

To convict Petitioner of felony murder, the state was required to prove beyond a reasonable doubt that Petitioner, either alone or with one or more persons, committed the crime of robbery in the first degree, and in the course and furtherance of that crime, he or another participant caused the death of a person other than one of the participants. *See* Or. Rev. Stat. 163.155(b).

Despite the new evidence that Petitioner's role in the crime was "limited" in the sense that he did not actually throw the victim in the river himself, Petitioner's other involvement was sufficient to convict him of felony murder. Petitioner admitted to the police he intended to steal the victim's money, and that he left the bar with the victim. There was ample evidence that Petitioner intentionally participated in the assault in the alley

and then took the victim's wallet and that Petitioner disposed of a weapon used in the assault. There was also ample evidence that the victim was killed "in the course of an in furtherance of" the robbery and that Petitioner was an active and knowing participant in the crime. Or. Rev. Stat. 163.115(b). Indeed, Petitioner expressed no surprise or objection when Anderson announced the victim was "floating," and worse, then agreed to contribute money to have the victim's car sent to the "crusher."

In summary, the new evidence does not establish that it is more likely than not that no reasonable juror would have found Petitioner guilty of felony murder beyond a reasonable doubt. Accordingly, Petitioner's procedural default cannot be excused.

## II. Moot Claim

To the extent Petitioner continues to argue he is entitled to relief because trial counsel did not object when the trial court failed to instruct the jury on the specific intent required for an Aggravated Murder conviction, this claim as Respondent correctly notes and Petitioner concedes, is moot.

## III. Remaining Claims for Relief

Finally, as previously noted, Petitioner alleged numerous grounds for relief in his Second Amended Petition which he did not address, but which he also did not specifically waive, in his Memorandum in support of his Petition. Although Petitioner has

not supported the majority of his claims with briefing, the Court has nonetheless reviewed the unbriefed claims. Have done so, the Court concludes these claims also are without merit. Accordingly, Petitioner is not entitled to relief on those claims. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")

## **CONCLUSION**

For these reasons, the Court DENIES the Second Amended Petition for Writ of Habeas Corpus (#74), and DISMISSES this action.

IT IS SO ORDERED.

DATED this  23rd  day of September, 2005.

                          /s/ Anna J. Brown
                          ANNA J. BROWN
                          United States District Judge